UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15-cv-501-FDW

| | |
|---|---|
| WILLIAM D. BULLARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| DAVID MITCHELL, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 1); on Plaintiff's Motion to Appoint Counsel, (Doc. No. 5); and on Plaintiff's Motion to Show Cause for a Preliminary Injunction, and Motion for Temporary Restraining Order, (Doc. No. 7). See 28 U.S.C. §§ 1915(e)(2); 1915A. On November 10, 2015, the Court entered an order waiving the initial filing fee and directing monthly payments to be made from Plaintiff's prison account. (Doc. No. 6). Thus, Plaintiff is proceeding in forma pauperis.

**I.     BACKGROUND**

Pro se Plaintiff William D. Bullard, a North Carolina state court inmate currently incarcerated at Lanesboro Correctional Institution ("Lanesboro") in Polkton, North Carolina, filed this action on October 19, 2015, pursuant to 42 U.S.C. § 1983. Plaintiff brings various claims against Defendants, including excessive force in violation of his constitutional right not to be subjected to cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution, and failure to protect in violation of the Eighth Amendment. In his Complaint,

1

Plaintiff names the following persons as Defendants: (1) George Solomon, Director of Prisons, North Carolina Department of Public Safety; (2) David Mitchell, Superintendent of Lanesboro; (3) FNU Reynolds, identified as a "Captain" at Lanesboro; (4) Kevin Ingram, identified as a Unit Manager at Lanesboro; (5) FNU Cole, unidentified; (6) FNU Boney, identified as a Correctional Officer at Lanesboro; (7) FNU Woodward, identified as a Correctional Officer at Lanesboro; (8) FNU Lee, identified as a Correctional Officer at Lanesboro; (9) FNU Burris, identified as a Correctional Officer at Lanesboro; (10) FNU Tillman, identified as a Correctional Officer at Lanesboro; (11) Raven Mack, identified as a Correctional Officer at Lanesboro; and (12) A. Smith, identified as a Correctional Officer at Lanesboro. Plaintiff alleges the following in the Complaint:

> On July 22, 2015, Plaintiff was getting his morning medication from nurse Goins where they got into a conflict with each other. A few minutes later Defendants Boney and R. Smith came to Plaintiff's cell door and told plaintiff to "submit to the handcuffs, because we about to 'fuck you up.'" Plaintiff refused because he feared for his life based on Smith's and Roney's reputation for jumping on other inmates and because of past situations with them. Not long after they left plaintiff's door, Sergeant Horne came from lower Richmond (another unit) with Defendant Tillman and another unknown officer to get him to submit to the handcuffs to go in "full restraints" because of the incident with nurse Goins, but he refused and let them know he feared for his life.
> Then the unit manager, Defendant Kevin Ingram, came to plaintiff's cell door and they got into a conflict and he said, "you going to submit, we going to come in and get you either way, sir," and he walked away. When Plaintiff heard that, he quickly jammed his cell door (to keep it from opening) to keep himself safe and from officers opening the cell door to harm him.
> Defendant Ingram came back and stated, "Don't worry, we going to get you," again, and we got into a conflict. Shortly after, Defendant Reynolds the [officer in charge] at the time came to plaintiff's cell and he had the shield with him and Defendant Ingram was standing by the gate to the steps at the top, and plaintiff finally agreed to submit to the cuffs.
> Defendant Reynolds asked for the keys from Defendant Ingram so he could open Plaintiff's wicket door. Plaintiff then stuck his arms out to be cuffed and Defendant Reynolds yelled, "He got a weapon!" and slammed Plaintiff's arm in the trap door. Plaintiff screamed in pain and Defendant Ingram and Cole came to the door and Defendant Ingram told Defendant Reynolds to break Plaintiff's

2

arm. They began to push the trap closed while Plaintiff's arm was still stuck in the wicket trap door. Defendant Cole sprayed mace into the side of the trap hitting Plaintiff in his eyes and face. Plaintiff's arm was still stuck in the trap. Cole yelled into her radio "for all available staff to report to B-block."

Defendant Ingram yelled, "Somebody give me a baton, I'm a beat this motherfucker!" Thankfully nobody had a baton. Defendant A. Smith then sprayed his entire can of mace into Plaintiff's face through the side of the trap. Plaintiff's arm was still stuck in the trap. Defendant Ingram then told his officers to go get the mechanical mace with the hose on the end and Plaintiff was sprayed directly in his face with it by Defendant Woodard.

Defendant Ingram yelled, "just pop the door Now!" The door was popped, but it wouldn't open due to plaintiff jamming it earlier. Defendant Ingram yelled, "Go get the bar out of my office!" Defendant A. Smith came back with the bar as ordered by his superior.

Defendants Reynolds, Tillman, Mack, Boney, Woodard, Lee, Burris, and Cole all sat around and watched this happening without intervening and trying to stop what was being done and without recording the obvious anticipated use of force.

Defendant A. Smith took the black bar (that was supposed to be used to open the jammed cell door) and started trying to hit plaintiff with it through the wicket trap door.

They finally got the cell door open, plaintiff attempted to run out [of] his cell to save his life and was slammed on his face onto the floor inside a large puddle of his own blood.

Plaintiff was then handcuffed and shackled, then Defendant A. Smith started punching plaintiff in his face while other officers held Plaintiff down.

Defendant Kevin Ingram then ran up the steps and jumped on top of plaintiff's back and stomped on plaintiff and pulled up plaintiff's shirt and started punching plaintiff in his side, while defendant Cole screamed, ["]hey, hey, stop that.["]

Plaintiff was then lifted up in the air while blood was leaking from his head. Staff put a bag over plaintiff's head while he was in the air to keep the blood from leaking on the floor.

Plaintiff was taken and laid on the floor in the middle of the hallway in front of the sick call room and then plaintiff was taken and strip searched, while plaintiff was still bleeding.

After plaintiff was searched, Sergeant Boone then came and took pictures of plaintiff's head and face.

Plaintiff was then taken to be screened by nurse Vanscoten and he said that plaintiff would need to go and get stitches at the outside hospital, but plaintiff would see the doctor here at Lanesboro first and he would decide.

Plaintiff was told by nurse Vanscoten to go take a shower so the injuries could be seen better, but when plaintiff was taken to the shower, he was in so much pain he couldn't so he refused and plaintiff's vision was also blurry and he wanted and needed medical treatment, and he was still bleeding.

3

>     Plaintiff was taken back to nurse Vanscoten and his face was wiped a little bit and bandage was put over the gash. Plaintiff was eventually taken to main medical and Mr. Marshall from mental health had plaintiff kept there. A few minutes after plaintiff was there he was taken to see Dr. Searles. Dr. Searles did a brief examination and had nurse Bradley to clean all of the blood off of plaintiff's face and head and clean the gash above his eye and put some sturi-strips [sic] on the gash. Dr. Searles made a verbal and written order to the nurse and custody staff that head checks/neuro checks [were] to be done on plaintiff every (2) two to (4) four hours, due to the severity of the head injury and amount of blood loss.
>     Plaintiff was kept in main medical until Friday July 24, 2015 because of doctors' orders and also so the same shift wouldn't be working on the day plaintiff was taken back. Plaintiff was then brought back to B-block in the same cell he was in before the incident happened on Anson unit.

(Doc. No. 1 at 7-12). Based on the above factual allegations, Plaintiff alleges that, as supervisors, Defendants Mitchell and Solomon failed to take disciplinary action to curb the known pattern of physical abuse of inmates by the remaining Defendants. As to the remaining Defendants, Plaintiff alleges that they either used excessive force against Plaintiff in violation of Plaintiff's Eighth Amendment rights, or that they failed to intervene to stop the excessive force being used by other Defendants. (Id. at 12-13). Plaintiff seeks a declaratory judgment as well as compensatory and punitive damages. (Id. at 7; 14).

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such

4

as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

#### A. Initial Review of Plaintiff's Claims

#### 1. Plaintiff's Eighth Amendment Claims against all Defendants

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

Plaintiff brings various Eighth Amendment claims against Defendants based on excessive force, failure to protect, and failure to intervene. First, as to the excessive force claims against the various Defendants, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, the Supreme Court has recently reiterated that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S.

34, 38 (2010). In Wilkins v. Gaddy, the Supreme Court observed:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 37-38 (citations omitted).

As for Plaintiff's claims based on failure to protect and failure to intervene against the various Defendants, the negligent failure to protect an inmate from assaults by other prisoners, or by other prison guards, does not rise to the level of an unconstitutional violation. Davidson v. Cannon, 474 U.S. 344, 348 (1986). To show deliberate indifference, a plaintiff must allege that the prison official had actual knowledge of an excessive risk to the plaintiff's safety. Danser v. Stansberry, No. 13-1828, 2014 WL 2978541, at *5 (4th Cir. Sept. 12, 2014). In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The Court first finds that Plaintiff's claims do not survive initial review as to Defendants Mitchell and Solomon. As to these two Defendants, Plaintiff does not allege any personal involvement, and they cannot be held liable for the alleged acts of the other officers because liability under § 1983 cannot be based on respondeat superior. See Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978) (stating that under § 1983, liability is personal in nature,

6

and the doctrine of respondeat superior does not apply).

As to the remaining Defendants, taking Plaintiff's allegations as true for the purposes of initial review, the Court finds that Plaintiff states an Eighth Amendment claim against the remaining Defendants in that Plaintiff's allegations are not clearly frivolous.

**B. Plaintiff's Motion to Appoint Counsel**

Next, as for Plaintiff's motion to appoint counsel, Plaintiff alleges that, as a segregation inmate, he has extremely limited access to the law library, that he has limited knowledge of the law, that the issues are complex, and that he has been unable to obtain an attorney on his own to represent him. There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Notwithstanding Plaintiff's contentions to the contrary, Plaintiff has not shown exceptional circumstances justifying appointment of counsel at this time. Therefore, Plaintiff's motion to appoint counsel will be denied. If this action proceeds to trial, however, the Court will consider appointment of counsel to represent Plaintiff during the trial proceedings.

**C. Plaintiff's Motion to Show Cause for a Preliminary Injunction, and Motion for Temporary Restraining Order**

Finally, as to Plaintiff's motion for a preliminary injunction (and a motion for temporary restraining order), a preliminary injunction is an extraordinary remedy afforded before trial at the discretion of the district court. In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 524-26 (4th Cir. 2003). It is an extraordinary remedy never awarded as of right. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of

injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 542 (1987). "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24. To obtain a preliminary injunction, the plaintiff must establish (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009).

Plaintiff seeks an order from the Court prohibiting Defendants from "having any contact, control or in any way overseeing anything to do with plaintiff." (Doc. No. 7 at 1). Plaintiff also seeks immediate transfer to another prison. (Id.). The Court has considered the four relevant factors in determining whether to issue a preliminary injunction, and the Court finds that these factors do not warrant a preliminary injunction. Most significantly, Plaintiff has not shown he is likely to suffer irreparable harm in the absence of preliminary relief. Thus, the Court will deny Plaintiff's motion.

**IV.     CONCLUSION**

In sum, the Complaint survives initial review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A, as to all Defendants except for Defendants Mitchell and Solomon.[1] Furthermore, Plaintiff's motions to appoint counsel and motions for a preliminary injunction and for a temporary restraining order are denied.

**IT IS, THEREFORE, ORDERED** that:

---

[1] This ruling does not prevent Defendants from moving to dismiss this action based on any affirmative defenses, abstention principles, etc.

1. Plaintiff's Complaint, (Doc. No. 1), survives initial review under § 1915(e) and 28 U.S.C. § 1915A as to all Defendants except for Defendants Mitchell and Solomon, who shall be dismissed from this action.

2. Plaintiff's Motion to Appoint Counsel, (Doc. No. 5), is **DENIED**.

3. Plaintiff's Motion to Show Cause for a Preliminary Injunction and Temporary Restraining Order, (Doc. No. 7) is **DENIED**.

4. The Clerk shall send Plaintiff summons forms to fill out so that service may be made on the remaining Defendants. Once the Court receives the summons, the U.S. Marshal shall effectuate service on Defendants at the addresses provided by Plaintiff.

Signed: November 23, 2015

Frank D. Whitney
Chief United States District Judge